1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

ANN WOODSON EASLEY,          )    NO. CV 22-7815 DSF (KS)
          **Plaintiff,**   )
                 )
     **v.**               )    **MEMORANDUM AND ORDER**
                 )    **DISMISSING COMPLAINT**
POLICE CHIEF MICHAEL R.    )    **WITH LEAVE TO AMEND**
MOORE, et al.,           )
                 )
         **Defendants.**  )
_____ )

## I.    INTRODUCTION

On October 20, 2022, Ann Woodson Easley ("Plaintiff"), a resident of New Mexico proceeding *pro se* and *in forma pauperis*, filed a civil rights complaint ("Complaint") alleging that Defendants seized her vehicle in Los Angeles and impounded it without probable cause in violation of the Fourth Amendment to the United States Constitution.  (Dkt. No. 1.)  She filed the Complaint against Michel R. Moore, the police chief of the Los Angeles Police Department ("LAPD"), as well as Los Angeles Police officer Paul Ulmer.  (*Id.* at 2.)  Plaintiff sues both Defendants in their official capacities only.  (*Id.*)

1     Under Federal Rule of Civil Procedure 12(b)(6) a trial court may dismiss a claim *sua*
2  *sponte* and without notice "where the claimant cannot possibly win relief."  *Omar v. Sea-Land*
3  *Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987); *see also Sparling v. Hoffman Constr. Co.*, 864
4  F.2d 635, 638 (9th Cir. 1988) (same); *Baker v. Director, U.S. Parole Comm'n*, 916 F.2d 725,
5  726 (D.C. Cir. 1990) (*per curiam*) (adopting Ninth Circuit's position in *Omar* and noting that
6  in such circumstances a *sua sponte* dismissal "is practical and fully consistent with plaintiffs'
7  rights and the efficient use of judicial resources").  The court's authority in this regard includes
8  *sua sponte* dismissal of claims against defendants who have not been served and defendants
9  who have not yet answered or appeared.  *See Abagnin v. AMVAC Chemical Corp.*, 545 F.3d
10 733, 742-43 (9th Cir. 2008); *see also Reunion, Inc. v. F.A.A.*, 719 F. Supp. 2d 700, 701 n.1
11 (S.D. Miss. 2010) ("[T]he fact that [certain] defendants have not appeared and filed a motion
12 to dismiss is no bar to the court's consideration of dismissal of the claims against them for
13 failure to state a claim upon which relief can be granted, given that a court may dismiss any
14 complaint *sua sponte* for failure to state a claim for which relief can be granted pursuant to
15 Rule 12(b)(6).").

16
17     In determining whether a complaint should be dismissed at screening, the Court applies
18 the standard of Federal Rule of Civil Procedure 12(b)(6): "[a] complaint must contain
19 sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."
20 *Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015).  Thus, the plaintiff's factual
21 allegations must be sufficient for the court to "draw the reasonable inference that the defendant
22 is liable for the misconduct alleged."  *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011)
23 (citation and internal quotation marks omitted); *see also Bell Atlantic Corp. v. Twombly*, 550
24 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the
25 speculative level.").

26
27     When a plaintiff appears *pro se* in a civil rights case, the court must construe the
28 pleadings liberally and afford the plaintiff the benefit of any doubt.  *Akhtar v. Mesa*, 698 F.3d

1202, 1212 (9th Cir. 2012); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (citations and internal quotation marks omitted)).  In giving liberal interpretation to a *pro se* complaint, however, the court may not supply essential elements of a claim that were not initially pled, *Byrd v. Maricopa County Sheriff's Dep't*, 629 F.3d 1135, 1140 (9th Cir. 2011), and the court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

If the court finds that a *pro se* complaint fails to state a claim, the court must give the *pro se* litigant leave to amend the complaint unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment."  *Akhtar*, 698 F.3d at 1212 (internal quotation marks omitted); *Lira v. Herrera*, 427 F.3d 1164, 1176 (9th Cir. 2005).  However, if amendment of the pleading would be futile, leave to amend may be denied.  *See Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1116 (9th Cir. 2014) ("'Futility of amendment can, by itself, justify the denial of a motion for leave to amend,' *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995), [a]nd the district court's discretion in denying amendment is 'particularly broad' when it has previously given leave to amend.").

For the following reasons, the Court finds that the Complaint fails to state a cognizable claim for relief and must be dismissed.[1]  However, leave to amend is granted.

\\

\\

---

[1]      Magistrate judges may dismiss a complaint with leave to amend without approval of the district judge.  *See McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

3

## II.   ALLEGATIONS OF THE COMPLAINT

Plaintiff sues the Defendants for improperly authorizing her car, a 1981 Datsun 280ZX, to be towed from where it was parked on a public street. (Dkt. No. 1 at 7-11.) Plaintiff makes the following specific allegations:

Plaintiff and her husband traveled to California from New Mexico "with very little money" to see and help Plaintiff's daughter in San Pedro. (*Id.* at ¶¶ 6, 9.) Plaintiff alleges that her daughter was being manipulated and trafficked by her uncle, and in that regard, Plaintiff and her husband were also in California "to fight against human trafficking." (*Id.* at ¶¶ 6, 10.)

On September 16, 2022, at "around noon," an unnamed LAPD officer was "looking at" Plaintiff's car, which was parked at 825 Capitol Street in San Pedro, California, in front of Harbor Highlands Park. (*Id.* at ¶ 1.) Plaintiff alleges that she is "not the registered owner" of the car, but that she is the "legal owner" of the car and had proof to that effect inside the car. (*Id.* at ¶ 4.) Plaintiff was in the park and approached the officer. (*Id.* at ¶ 1.) The officer then told Plaintiff that "he had written a parking ticket for 72 hours parked in the same place." (*Id.*) The officer politely asked Plaintiff to place the ticket on the front windshield, and Plaintiff complied. (*Id.*) The officer told Plaintiff to move the car the following day "even just a space or two down the street." (*Id.*)

Plaintiff's car was not running properly and the battery was drained despite being charged the day prior. (*Id.* at ¶ 2.) Further, "[i]t seemed that every time [Plaintiff] started the car, two or three cars would park in front of [Plaintiff's] car (often revving their engines)" and the car would "start to sputter and die." (*Id.*)

At approximately 1:30 p.m. the same day, Plaintiff heard a loud truck behind her as she was ostensibly "working on some papers in the park." (*Id.* at ¶ 3.) Plaintiff turned to look and

4

saw her car on top of a flat-bed tow truck with two LAPD police officers behind the truck in a patrol car.  (*Id.*)  Plaintiff attempted to run toward them but "they did not seem to hear" her and drove her car away.  (*Id.*)

Although nearly all of Plaintiff's and her husband's luggage and personal items were in the car when it was towed, Plaintiff still had her purse and cell phone with her, so she was able to make phone calls to determine where the car was taken for impound.  (*Id.* at ¶ 4.)  On September 18, 2022, Plaintiff and her husband took a bus to the tow yard.  (*Id.*)  Defendant Ulmer "had put a 'hold' on the vehicle and its contents."  (*Id.*)  Plaintiff and her husband "had no money to pay [the] fees" to release the car from impound.  (*Id.*)  They were also unsuccessful in trying to reach Defendant Ulmer by phone.  (*Id.* at ¶ 5.)  Plaintiff contends that she would have had more money but her bank in New Mexico was altering withdrawals, sending bank statements to a defunct address, and "converted" more than $100,000 from Plaintiff's savings account.  (*Id.* ¶ 9.)

The couple then went to the Harbor Division Police Station and found Defendant Ulmer in person.  (*Id.* at ¶ 5.)  On September 22, 2022, Defendant Ulmer "gave us written permission to enter the car and get our things."  (*Id.*)  Prior to that, Plaintiff and her husband "had been sleeping on the ground in the park" and had been "given a blanket and two sweaters to keep warm."  (*Id.*)

Plaintiff alleges that the "impound report states that the car is abandoned," which Plaintiff avers "is obviously not true."  (*Id.* at ¶ 7.)  Plaintiff also alleges that Officer Ulmer stated that the car was towed because "people had called to complain about the car," but Plaintiff contends that the car "was not in front of anyone's house," and that the parking ticket, which is ostensibly now illegible from sitting in direct sunlight, reflected a nonexistent street address.  (*Id.*)

5

On an unidentified date and time, Plaintiff and her husband went to a "Downtown Los Angeles ticket payment office to request a hearing about the impound of the car," but a clerk told them, "No hearings." (*Id.* at ¶ 8.)

Finally, Plaintiff alleges that, prior to the car being impounded, she had placed a sign in the window stating, "We are against human trafficking.  We come to San Pedro with hope that the LAPD will free the Innocents from their captors who are cruel and without mercy." (*Id.* at ¶ 10.)  Plaintiff contends she "did not think that the words would offend the police, but perhaps they did." (*Id.*)

Based upon the foregoing, Plaintiff accuses the LAPD of depriving her of her Fourth Amendment "right of protection against unjust search or seizure without probable cause." (*Id.*)  More specifically, Plaintiff sues Defendant Ulmer of violating the Fourth Amendment by "ordering my car to be impounded." (*Id.* at 4.)  Further, Plaintiff sues Defendant Moore under the theory of "respondeat superior with vicarious liability" as Defendant Moore allegedly "endorsed and ratified the actions of Police Officer Paul Ulmer." (*Id.*)

Plaintiff seeks relief in the form of: (1) damages equal to the fair market value of the car at the time it was impounded, which Plaintiff claims is $15,000, or "return of the vehicle"; (2) $700 in damages for items allegedly stolen from the vehicle; and (3) punitive damages in the amount of $7,000 "for willful abuse of the law while wearing a badge, employed under the color of law." (*Id.* at 11.)

\\
\\
\\
\\
\\

## III.    DISCUSSION

### A.    Legal Standard

"The impoundment of an automobile is a seizure within the meaning of the Fourth Amendment." *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005).  However, an "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity" and not against the official personally.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  Since "the real party in interest in an official-capacity suit is the governmental entity and not the named official, the entity's policy or custom must have played a part in the violation of federal law."  *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (internal quotation marks and citations omitted); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).  Specifically, a plaintiff must show that a municipal employee "committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local government entity."  *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992) (internal quotation marks omitted).  In addition, a plaintiff must show that the policy was "(1) the cause in fact and (2) the proximate cause of the constitutional deprivation."  *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

Moreover, a supervisor may be held individually liable under § 1983 only "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional deprivation."  *Keates v. Koile*, 883 F.3d 1228, 1242-43 (9th Cir. 2018) (internal quotation marks and citation omitted).  Further, "vicarious liability is inapplicable to § 1983 suits."  *Id.* at 1242.

\\

7

Lastly, "[a]lthough a municipality may be liable for compensatory damages in § 1983 actions, it is immune from punitive damages under the statute." *Mitchell v. Dupnik*, 75 F.3d 517, 527 (9th Cir. 1996) (*citing City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

### B.    Analysis

As stated above, Plaintiff sues both Defendants *solely* in their official capacities.  (Dkt. No. 1 at 2.)  However, the Complaint makes no allegations that any defendant was following a policy or custom that gave rise to a constitutional violation, or that the policy in question was the cause in fact and the proximate cause of the constitutional deprivation." *Hafer*, 502 U.S. at 25; *Monell*, 436 U.S. at 694; *Harris*, 489 U.S. at 385; *Gillette*, 979 F.2d at 1346; *Trevino*, 99 F.3d at 918.  Accordingly, Plaintiff's claims against Defendants in their official capacities must be dismissed.

Furthermore, Plaintiff's claim against Defendant Moore under a supervisory liability theory is far too conclusory to survive dismissal.  Plaintiff makes the perfunctory assertion that Defendant Moore "endorsed and ratified the actions of Police Officer Paul Ulmer" (dkt. no. 1 at 4) without alleging any facts establishing Defendant Moore's personal involvement in the impoundment of Plaintiff's vehicle, and without articulating any causal connection whatsoever between wrongful conduct on the part of Defendant Moore and the Fourth Amendment violation at issue.  *Keates*, 883 F.3d at 1242-43.  Further, as noted above, "vicarious liability is inapplicable to § 1983 suits," *id.* at 1242, so Plaintiff's claim based on vicarious liability must also be dismissed.

Finally, Plaintiff's prayer for punitive damages is also subject to dismissal, as the lawsuit brought against these LAPD Defendants in their official capacities is "in all respects other than name, to be treated as a suit against the entity," *Graham*, 473 U.S. at 166, and the municipal

8

entity in this case (LAPD) is immune from suit for punitive damages under section 1983. *Mitchell*, 75 F.3d at 527; *Fact Concerts, Inc.*, 453 U.S. at 271; *see also Coats v. Los Angeles Police Department*, No. CV 18-10135-DSF (JPR), 2019 WL 266967, at *8 (C.D. Cal. Jan. 18, 2019) (finding the LAPD immune from suit for punitive damages in § 1983 action).

## IV.  CONCLUSION

For the reasons stated above, the Complaint is dismissed **with leave to amend**.  If Plaintiff still wishes to pursue this action, she is granted **thirty (30) days** from the date of this Memorandum and Order within which to file a First Amended Complaint.  In any amended complaint, Plaintiff shall cure the defects described above.

**Plaintiff shall not include new defendants or new allegations that are not reasonably related to the claims asserted in the original Complaint.**  Further, the First Amended Complaint, if any, shall be complete in itself and shall bear both the designation "First Amended Complaint" and the case number assigned to this action.  **It shall not refer in any manner to Plaintiff's earlier pleadings**, and claims that are not expressly included in the First Amended Complaint shall be deemed abandoned.

In any amended complaint, Plaintiff may not rely on conclusory allegations and formulaic recitations of applicable law**, and if suing municipal employee Defendants in their official capacities, must allege that the Defendants committed a constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom that constitutes the standard operating procedure of the LAPD.**  *Gillette***,** 979 F.2d at 1346.  Plaintiff shall also allege that the policy was the cause in fact and the proximate cause of the constitutional deprivation.  *Trevino*, 99 F.3d at 918.  If Plaintiff sues any individual defendant under a theory of supervisor liability, Plaintiff must articulate the facts indicating that defendant's personal involvement in the constitutional deprivation and a causal link between

9

that defendant's wrongful conduct and the constitutional injury.  *Keates*, 883 F.3d at 1242-43.  Finally, Plaintiff shall not include any prayer for punitive damages against municipal officials in their official capacities.  *Mitchell*, 75 F.3d at 527.  Plaintiff is strongly encouraged to utilize the Central District's standard civil rights complaint form when filing any amended complaint.

**Plaintiff's failure to timely comply with this Order may result in a recommendation of dismissal.  If Plaintiff no longer wishes to pursue this action, in whole or in part, she may voluntarily dismiss it, or any portion of it, by filing a signed document entitled "Notice of Dismissal" in accordance with Federal Rule of Civil Procedure 41(a)(1).**

DATE: November 10, 2022

KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE

THIS MEMORANDUM IS NOT INTENDED FOR PUBLICATION NOR IS IT INTENDED TO BE INCLUDED IN OR SUBMITTED TO ANY ONLINE SERVICE SUCH AS WESTLAW OR LEXIS.